**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **JESSE ROSE and ASHLY SIGMON,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**SYSCO CORPORATION,**<br><br>Defendant. | Case No.<br><br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs, Jesse Rose and Ashly Sigmon, individually and on behalf of the Class defined below of similarly situated persons, allege the following against Sysco Corporation ("Sysco" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and review of public documents as to all other matters:

### <u>INTRODUCTION</u>

1.      Plaintiffs brings this class action against Sysco for its failure to properly secure and safeguard Plaintiffs' and other similarly situated current and former employees' (collectively referred to herein as "employees" or "Class Members") personally identifying information from hackers. According to the company, this information may have included names, Social Security numbers, and account numbers, or similar information (the "Private Information") for, upon

information and belief, at least 71,000 Class Members, though the exact number of individuals impacted has not yet been revealed.[1]

2.        On or around March 5, 2023, Sysco suffered a cyberattack that began on or around January 14, 2023 and allowed a threat actor to gain access to Sysco's systems and acquire the Private Information belonging to Plaintiffs and Class Members (the "Data Breach").[2] Through the Data Breach, the cybercriminals were able to access and exfiltrate files containing current and former employees' (along with customers' and suppliers') Private Information.

3.        As a result of the Data Breach, Plaintiffs and Class Members are at a substantial and imminent risk of identity theft and various other forms of personal, social, and financial harm. This risk will remain for their respective lifetimes.

4.        The Private Information compromised in the Data Breach included highly sensitive data that represents a gold mine for data thieves, including but not limited to, Social Security numbers that Sysco collected from its current and former employees and maintained in its system for longer than necessary. Compounding the damage done by the Data Breach, Sysco failed to notify affected Class Members until nearly four months after it discovered the Data Breach.

5.        Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, and giving false information to police during an arrest.

---

[1] *See* https://www.bitdefender.com/blog/hotforsecurity/food-distribution-giant-sysco-confirms-data-breach-impacting-customer-and-employee-data/ (last visited on May 16, 2023).
[2] *Id.*

6.     There has been no assurance offered by Sysco that all personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future.

7.     Therefore, Plaintiffs and Class Members are at an imminent, immediate, and continuing increased risk of suffering ascertainable losses in the form of identity theft and other fraudulent misuse of their Private Information, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

8.     Plaintiffs brings this class action lawsuit to address Sysco's inadequate safeguarding of her and Class Members' Private Information that it collected and maintained, and its failure to provide timely and adequate notice to Plaintiffs and Class Members of the types of information that were accessed, and that such information was subject to unauthorized access by cybercriminals.

9.     The potential for improper disclosure and theft of Plaintiffs' and Class Members' Private Information was a known risk to Sysco, and thus Sysco was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

10.     Plaintiffs' and Class Members' identities are now at risk because of Sysco's negligent conduct because the Private Information that Sysco collected and maintained is now in the hands of data thieves and other unauthorized third parties.

11.     Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

12.     Accordingly, Plaintiffs, on behalf of themselves and the Class, assert claims for negligence, invasion of privacy, breach of implied contract, unjust enrichment, and declaratory and injunctive relief.

## I.     PARTIES

13.     Plaintiff Jesse Rose is an individual citizen of the State of Colorado.

14.     Plaintiff Ashly Sigmon is an individual citizen of the State of Indiana.

15.     Defendant Sysco Corporation is incorporated in the State of Delaware and headquartered in Houston, Texas.

## II.     JURISDICTION AND VENUE

16.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Sysco. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

17.     This Court has jurisdiction over Sysco because Sysco is incorporated and conducts business in this District.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Sysco resides in this District and is being served in this District.

### III.     FACTUAL ALLEGATIONS

**A.  *Sysco's Business and Collection of Plaintiffs' and Class Members' Private Information***

19.     Founded in 1969, Sysco is a global food distributor – the largest of its kind in North America, holding a market share of approximately fourteen percent (14%).[3]

20.     With more than 160 distribution facilities throughout the United States, Sysco provides food and related products and services to approximately 390,000 restaurants, schools, hospitals, nursing homes, hotels, businesses, and other foodservice customers.

21.     In 1991, Sysco created a subsidiary called Sygma Network, Inc. ("Sygma") in order to consolidate its chain restaurant distribution systems and improve its service to chain restaurants.[4] By 1997, Sygma consisted of 11 distribution centers serving customers in 37 states and posted sales of $1.3 billion.[5] Sygma now has over 3,700 customers, services over 13,000 restaurants, and employs over 3,500 associates.[6]

22.     As a condition of employment with Sysco and its subsidiaries, including Sygma, Defendant requires that its employees entrust it with highly sensitive personal information. In the ordinary course of employment with Sysco, Plaintiffs and Class Members were required to provide their Private Information to Defendant.

23.     Because of the highly sensitive and personal nature of the information Sysco acquires and stores with respect to its employees, Sysco, upon information and belief, promises to, among other things: keep employees' Private Information private; comply with industry standards

---

[3] *See* https://www.encyclopedia.com/social-sciences-and-law/economics-business-and-labor/businesses-and-occupations/sysco-corp (last visited on May 16, 2023).
[4] *Id*.
[5] *Id*.
[6] *See* https://www.sygmanetwork.com/About.html (last visited on May 16, 2023).

related to data security and the maintenance of its employees' Private Information; inform its employees of its legal duties relating to data security and comply with all federal and state laws protecting employees' Private Information; only use and release employees' Private Information for reasons that relate to the services it provides; not store former employees' Private Information for longer than is necessary to carry out its business operations; and provide adequate notice to its current and former employees if their Private Information is disclosed without authorization.

24.     By obtaining, collecting, using, and deriving a benefit from its employees' Private Information, Sysco assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure and exfiltration.

25.     Plaintiffs and Class Members relied on Sysco to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information, which Defendant ultimately failed to do.

**B.  The Data Breach and Defendant's Inadequate Notice to Plaintiffs and Class Members**

26.     In a data breach notice letter that went out to all impacted current and former Sysco employees on or around May 4, 2023, Defendant reported that it learned of unauthorized access to its computer systems approximately four months earlier on or around January 14, 2023. Based upon the company's investigation, it discovered that the Data Breach was the result of an attack on its systems that allowed a "threat actor" to gain access to its systems and acquire certain data, including but not limited to, Plaintiffs' and Class Members Private Information. Thus, it is clear that the data thieves stole Plaintiffs' and Class Members' Private Information in order to either use it themselves for nefarious purposes, or to sell it on the dark web.

27. Through the Data Breach, the unauthorized cybercriminal(s) accessed and exfiltrated a cache of highly sensitive Private Information, including Sysco's current and former employees' names, Social Security numbers, account numbers, and similar information.

28. Sysco had obligations created by contract, industry standards, and common law to keep Plaintiffs' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

29. Plaintiffs and Class Members provided their Private Information to Sysco with the reasonable expectation and mutual understanding that Sysco would comply with its obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

30. Sysco's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

31. Sysco knew or should have known that its electronic records would be targeted by cybercriminals, yet it failed to take the necessary precautions to protect Plaintiffs' and Class Members' Private Information from being compromised.

32. In response to its admitted failure to safeguard Plaintiffs' and Class Members' Private Information, Sysco's response is particularly paltry. In its May 2023 notice letter the company offered Plaintiffs just 24 months of credit monitoring, though they were not automatically registered and they needed to receive the notice and take the additional, time-consuming step of enrolling in the coverage in order to receive it.

### C. Sysco Failed to Comply with FTC Guidelines

33. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices.

According to the FTC, the need for data security should be factored into all business decision-making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

34.     In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

35.     The FTC further recommends that companies not maintain personally identifiable information ("PII") longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

36.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data as an unfair act or practice

prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

37.    As evidenced by the Data Breach, Sysco failed to properly implement basic data security practices. Sysco's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information evidences its negligent failure to comply with the standards set forth by Section 5 of the FTCA.

38.    Sysco was at all times fully aware of its obligation to protect the Private Information of its current and former employees yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**D.  Sysco Failed to Comply with Industry Standards**

39.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect from current and former employees and maintain.

40.    Some industry best practices that should be implemented by businesses like Sysco include, but are not limited to, educating all employees, implementing strong password requirements, implementing multilayer security including firewalls, implementing anti-virus and anti-malware software, encrypting highly sensitive data, implementing multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow at least some, or perhaps all of, these industry best practices.

41.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as

firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

42.     Defendant also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

43.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### E. Sysco Breached its Duty to Safeguard Plaintiffs' and Class Members' Private Information

44.     In addition to its obligations under federal and state laws, Sysco owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Sysco owed a duty to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of its current and former employees.

45.     Sysco breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Sysco's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect current and former employees' Private Information;

c. Failing to properly monitor its own data security systems for existing intrusions;

d. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

e. Failing to adhere to industry standards for cybersecurity as discussed above; and

f. Otherwise breaching its duties and obligations to protect Plaintiffs' and Class Members' Private Information.

46. Sysco negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information and exfiltrate such Private Information.

47. Had Sysco remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiffs' and Class Members' confidential Private Information.

48. Accordingly, Plaintiffs' and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft.

## F. Sysco Should Have Known that Cybercriminals Target PII to Carry Out Fraud and Identity Theft

49. The FTC hosted a workshop to discuss "informational injuries," which are injuries that current and former employees like Plaintiffs and Class Members suffer from privacy and

11

security incidents such as data breaches or unauthorized disclosure of data.[7] Exposure of highly sensitive personal information that individuals to keep private may cause harm to them, such as the ability to obtain or keep employment. Individuals' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

50.     Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

51.     Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

---

[7] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on May 16, 2023).

52.     In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

53.     Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiffs' and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiffs and Class Members.

54.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[8] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

55.     Identity thieves can also use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's

---

[8] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited on May 16, 2023).

information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

56.     A study by the Identity Theft Resource Center[9] shows the multitude of harms caused by fraudulent use of PII:



57.     Indeed, a robust cyber black market exists in which criminals openly post stolen PII on multiple underground Internet websites, commonly referred to as the dark web.

58.     The value of such highly sensitive information is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that PII has considerable market value.

---

[9] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited on May 16, 2023).

59.     It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[10]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

60.     PII is a valuable commodity to identity thieves because once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

61.     As a result, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future and have no choice but to vigilantly monitor their accounts and purchase credit monitoring and identity theft protection for many years to come.

## G.  Plaintiffs' and Class Members' Damages

62.     Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

63.     Plaintiffs and Class Members entrusted their Private Information to Defendant in order to gain employment with Defendant.

64.     Plaintiff Rose began her employment with Sysco in or around May of 2022 and is currently still a Sysco employee.

---

[10] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited on May 16, 2023).

65.    Plaintiff Sigmon was employed by Sygma from February 14, 2022 to February 26, 2022. However, Plaintiffs' Private Information has inexplicably remained in Sysco's systems for over a year and, upon information and belief, is still in Sysco's possession and control.

66.    Plaintiffs' Private Information was subsequently compromised and exfiltrated as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

67.    As such, Plaintiffs and Class Members are at an imminent, immediate, and continuing increased risk of experiencing devastating instances of identity theft, including but not limited to, having loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, unauthorized charges on financial accounts, and other forms of identity theft.

68.    Plaintiffs and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to continue to carry out such targeted schemes against Plaintiffs and Class Members.

69.    The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiffs and Class Members, which has been and will continue to be used to carry out targeted fraudulent schemes against Plaintiffs and Class Members.

70.    Additionally, Plaintiffs and Class Members have spent and will continue to spend significant amounts of time monitoring their accounts and records for misuse.

71.    Finally, Plaintiffs and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the

value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

a.   The loss of property value of their Private Information;

b.   Monitoring for and discovering fraudulent charges;

c.   Canceling and reissuing credit and debit cards;

d.   Purchasing credit monitoring and identity theft prevention;

e.   Placing "freezes" and "alerts" with credit reporting agencies;

f.   Spending time on the phone with or at a financial institution to dispute fraudulent charges;

g.   Contacting financial institutions and closing or modifying financial accounts;

h.   Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

i.   Closely reviewing and monitoring bank accounts, credit reports, and explanations of benefits for additional unauthorized activity for years to come;

j.   Fielding and carefully reviewing an uptick in phishing emails, calls, and texts in order to prevent falling prey to fraudulent schemes; and

k.   The stress, nuisance, and aggravation of dealing with all other issues resulting from the Data Breach.

72.   Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Sysco, is protected from future additional breaches by the implementation of more adequate data security measures and

safeguards, including but not limited to, ensuring that the storage of data or documents containing personal and financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

73.     As a direct and proximate result of Sysco's actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## IV.     CLASS ACTION ALLEGATIONS

74.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

75.     Specifically, Plaintiffs proposes the following Nationwide Class (also referred to herein as the "Class"), subject to amendment as appropriate:

**Nationwide Class**

**All individuals in the United States who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.**

76.     Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

77.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Nationwide Class, as well as to add subclasses, before the Court determines whether certification is appropriate.

78.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

79.   <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of at least 100 current and former employees of Sysco whose data was compromised in the Data Breach and likely numbers in the tens of thousands. The identities of Class Members are ascertainable through Sysco's records, Class Members' records, publication notice, self-identification, and other means.

80.   <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.   Whether Sysco engaged in the conduct alleged herein;

b.   When Sysco learned of the Data Breach;

c.   Whether Sysco's response to the Data Breach was adequate;

d.   Whether Sysco unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information;

e.   Whether Sysco failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

f.   Whether Sysco's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g.   Whether Sysco's data security systems prior to and during the Data Breach were consistent with industry standards;

h.   Whether Sysco owed a duty to Class Members to safeguard their Private Information;

i.   Whether Sysco breached its duty to Class Members to safeguard their Private Information;

j.   Whether hackers exfiltrated Class Members' Private Information via the Data Breach;

k.   Whether Sysco had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

l.   Whether Sysco breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

m.   Whether Sysco knew or should have known that its data security systems and monitoring processes were deficient;

n.   What damages Plaintiffs and Class Members suffered as a result of Sysco's misconduct;

o.   Whether Sysco's conduct was negligent;

p.   Whether Sysco was unjustly enriched;

q.   Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

r.   Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

s.   Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

81. <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach.

82. <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

83. <u>Predominance</u>. Sysco has engaged in a common course of conduct toward Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Sysco's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

84. <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Sysco. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

85.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Sysco has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

86.     Finally, all members of the proposed Class are readily ascertainable. Sysco has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Sysco.

## CLAIMS FOR RELIEF

## COUNT I
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)

87.     Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

88.     Sysco knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

89.     Sysco knew or should have known of the risks inherent in collecting the Private Information of Plaintiffs and Class Members and the importance of adequate security. Sysco was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

90.     Sysco owed a duty of care to Plaintiffs and Class Members whose Private Information was entrusted to it. Sysco's duties included, but were not limited to, the following:

a.  To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b.  To protect current and former employees' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c.  To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d.  To employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to the FTCA and applicable industry standards;

e.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f.  To precisely disclose the type(s) of information compromised.

91.    Sysco's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

92.    Sysco's duty also arose because Defendant was bound by industry standards to protect its current and former employees' confidential Private Information.

93.    Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Sysco owed them a duty of care not to subject them to an unreasonable risk of harm.

94.     Sysco, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within its possession.

95.     Sysco, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and Class Members.

96.     Sysco breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.  Failing to adequately monitor the security of its networks and systems;

c.  Allowing unauthorized access to Class Members' Private Information;

d.  Failing to comply with the FTCA and applicable industry standards;

e.  Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

f.  Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

97.     Sysco had a special relationship with its current and former employees, including Plaintiffs and Class Members.

98.     Plaintiffs' and Class Members' willingness to entrust Sysco with their Private Information was predicated on the understanding that Sysco would take adequate security

precautions to protect it. Moreover, only Sysco had the ability to protect its systems (and the Private Information stored thereon) from attack.

99.     Sysco's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised and exfiltrated, as alleged herein and admitted by Defendant in its Notice to Plaintiffs and Class Members.

100.    Sysco's breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

101.    As a result of Sysco's negligence in breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of criminal third parties, has been and will continue to be used for fraudulent purposes.

102.    Sysco also had independent duties under state laws that required it to reasonably safeguard Plaintiffs' and Class Members' Private Information.

103.    As a direct and proximate result of Sysco's negligent conduct, Plaintiffs and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

104.    The injury and harm that Plaintiffs and Class Members suffered was reasonably foreseeable.

105.    Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

106.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Sysco to, *inter alia*, strengthen its data security systems and monitoring

procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT II**
**INVASION OF PRIVACY**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)**

107.    Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

108.    Plaintiffs and Class Members maintain a privacy interest in their Private Information, which is highly sensitive, confidential information that is also protected from disclosure by applicable laws and industry standards, as set forth above.

109.    Plaintiffs' and Class Members' Private Information was contained, stored, and managed electronically in Defendant's records, computers, and databases and was intended to be secured from unauthorized access to third-parties because highly sensitive, confidential matters regarding Plaintiffs' and Class Members' identities were only shared with Defendant for the limited purpose of obtaining employment.

110.    Additionally, Plaintiffs' and Class Members' Private Information is highly attractive to criminals who can nefariously use such Private Information for fraud, identity theft, and other crimes without the victims' knowledge and consent.

111.    Defendant's disclosure of Plaintiffs' and Class Members' Private Information to unauthorized third parties by allowing such parties to gain access to its network resulted from Defendant's failure to adequately secure and safeguard Plaintiffs' and Class Members' Private Information. Such failure was the direct and proximate cause of unauthorized intrusions into Plaintiffs' and Class Members' places of solitude and seclusion that are highly offensive to a reasonable person.

112.    Such exploitation of Plaintiffs' and Class Members' Private Information was done for Defendant's business purposes.

113.    Sysco's unauthorized disclosure of Plaintiffs' and Class Members' Private Information to criminal third parties permitted the electronic intrusion into private quarters where Plaintiffs' and Class Members' Private Information was stored.

114.    Plaintiffs and Class Members have been damaged by Sysco's conduct, including by incurring the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

## COUNT III
## BREACH OF IMPLIED CONTRACT
## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)

115.    Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

116.    Sysco provided employment to Plaintiffs and Class Members.

117.    Defendant, as employer, held the Private Information on behalf of Plaintiffs and Class Members. Holding Plaintiffs and Class Members' Private Information was part of Defendant's regular business practices, as agreed by the parties. When Plaintiffs and Class Members joined Defendant's employment (or, in Plaintiff Sigmon's case, employment with one of Defendant's subsidiaries), they agreed to have their Private Information stored in Defendant's network.

118.    Plaintiffs and Class Members entered implied contracts with Defendant in which Defendant agreed to safeguard and protect such Information and to timely detect any breaches of their Private Information. Plaintiffs and Class Members were required to share Private Information to obtain employment. In entering such implied contracts, Plaintiffs and Class Members

27

reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

119.    Plaintiffs and Class Members fully performed their obligations under their implied contracts with Defendant.

120.    Defendant's implied promises to Plaintiffs and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; and (7) taking other steps to protect against foreseeable data breaches.

121.    Defendant breached these implied promises it made with Plaintiffs and Class Members by failing to safeguard and protect their Private Information and by failing to notify Plaintiffs and Class Members thereof within a reasonable time.

122.    Plaintiffs and Class Members would not have entrusted their Private Information to Sysco in the absence of such an implied contract.

123.    Had Sysco disclosed to Plaintiffs and the Class that it did not have adequate computer systems and security practices in place to secure such sensitive data, Plaintiffs and Class Members would not have provided their Private Information to Sysco.

124.    Sysco recognized that Plaintiffs' and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiffs and the other Class Members.

125.    Sysco violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Private Information.

126.    Plaintiffs and Class Members have been damaged by Sysco's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

127.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide free lifetime credit monitoring to all Class Members.

## COUNT IV
## UNJUST ENRICHMENT
## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)

128.    Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

129.    This Count is pleaded in the alternative to Count III above.

130.    Plaintiffs and Class Members conferred a benefit on Defendant. Specifically, they provided Defendant with their Private Information, which Private Information has inherent value. In exchange, Plaintiffs and Class Members should have been entitled to have Defendant protect their Private Information with adequate data security, especially in light of their employer-employee relationship.

131.    Defendant knew that Plaintiffs and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiffs' retained data and used Plaintiffs and Class Members' Private Information for business purposes.

132.    Defendant failed to secure Plaintiffs' and Class Members' Private Information and, therefore, did not fully compensate Plaintiffs or Class Members for the value that their Private Information provided.

133.    Defendant acquired the Private Information through inequitable record retention as it failed to disclose the inadequate security practices previously alleged.

134.    If Plaintiffs and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to secure their Private Information, they would have made alternative employment choices that excluded Defendant.

135.    Plaintiffs and Class Members have no adequate remedy at law.

136.    Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiffs and Class Members conferred upon it.

137.    As a direct and proximate result of Sysco's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) the imminent and substantial risk of actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Sysco's possession and is subject to further unauthorized disclosures so long as Sysco fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and

money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

138.     Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Sysco and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Sysco from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

139.     Plaintiffs and Class Members may not have an adequate remedy at law against Sysco, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT V**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)**

140.     Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

141.     Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and common law described in this Complaint.

142.     Sysco owes a duty of care to Plaintiffs and Class Members, which requires it to adequately secure Plaintiffs' and Class Members' Private Information.

143.     Sysco still possesses Private Information regarding Plaintiffs and Class Members.

144. Plaintiffs alleges that Sysco's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their Private Information and the risk remains that further compromises of their Private Information will occur in the future.

145. Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. Sysco owes a legal duty to secure its current and former employees' Private Information from unauthorized disclosure and theft;

    b. Sysco's existing security measures do not comply with its implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect current and former employees' Private Information; and

    c. Sysco continues to breach this legal duty by failing to employ reasonable measures to secure current and former employees' Private Information.

146. This Court should also issue corresponding prospective injunctive relief requiring Sysco to employ adequate security protocols consistent with legal and industry standards to protect current and former employees' Private Information, including the following:

    a. Order Sysco to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members; and

    b. Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, Sysco must implement and maintain reasonable security measures, including, but not limited to:

i.       engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Sysco's systems on a periodic basis, and ordering Sysco to promptly correct any problems or issues detected by such third-party security auditors;

ii.      engaging third-party security auditors and internal personnel to run automated security monitoring;

iii.     auditing, testing, and training its security personnel regarding any new or modified procedures;

iv.      segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Sysco's systems;

v.       conducting regular database scanning and security checks;

vi.      routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

vii.     routinely and continually purging all former employee data that is no longer necessary in order to adequately conduct its business operations; and

viii.    meaningfully educating its users about the threats they face with regard to the security of their Private Information, as well as the steps Sysco's current and former employees should take to protect themselves.

147.   If an injunction is not issued, Plaintiffs will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at Sysco. The risk of another such breach

is real, immediate, and substantial. If another breach at Sysco occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

148.    The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Sysco if an injunction is issued. Plaintiffs will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Sysco's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Sysco has a pre-existing legal obligation to employ such measures.

149.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Sysco, thus preventing future injury to Plaintiffs and other current and former employees whose Private Information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described above, seek the following relief:

a.    An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Nationwide Class requested herein;

b.    Judgment in favor of Plaintiffs and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order instructing Sysco to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e.  An order requiring Sysco to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.  A judgment in favor of Plaintiffs and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

DATED:  May 17, 2023

Respectfully submitted,

**deLeeuw Law LLC**

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (DE Bar # 3569)
1301 Walnut Green Road
Wilmington, DE 19807
(302) 274-2180
(302) 351-6905 (fax)
brad@deleeuwlaw.com

OF COUNSEL:

**SIRI & GLIMSTAD LLP**
Mason A. Barney
Tyler J. Bean
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com